UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MARK A. FUGLE,

         Plaintiff,     DECISION AND ORDER

-vs-

                1:18-CV-0707 (CJS)

COMMISSIONER OF SOCIAL SECURITY,

         Defendant.

_____

INTRODUCTION

Plaintiff Mark A. Fugle brings this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Disability Insurance Benefits ("DIB"). Plaintiff claims to be disabled by significant back problems resulting from a motor vehicle accident in 2014. Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Pl.'s Mot., Dec. 27, 2018, ECF No. 9; Def.'s Mot., Feb. 25, 2019, ECF No. 12. For the reasons set forth below, Plaintiff's motion [ECF No. 9] is denied, the Commissioner's motion is granted [ECF No. 12], and the clerk is directed to close the case.

PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the underlying facts and procedural history in this case. Plaintiff, a carpenter, was in a serious motor vehicle accident on May 9, 2014. Transcript ("Tr.") 316, Oct. 10, 2018, ECF No. 6. He was

1

admitted to the Erie County Medical Center Emergency Department for acute complaint of back pain, and three days later underwent back surgery to repair an L1 burst facture by posterior spinal fusion T11-L3 vertebral level. *Id.* Imaging during Plaintiff's hospital stay also revealed the presence of previously undetected lymphoma and a diaphragmatic hernia. Tr. 513.

Plaintiff filed his DIB application on November 17, 2014, alleging an onset date of May 9, 2014, the date of Plaintiff's motor vehicle accident. Tr. 77, 229. In his initial "Disability Report" filed with the DIB application, Plaintiff claimed simply that a "back injury" limited his ability to work. Tr. 233. The Commissioner sent Plaintiff a notice of disapproved claim on March 11, 2015. Tr. 90. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 114.

Plaintiff's request was approved and the hearing was held in Buffalo, New York on April 12, 2017. Tr. 37. Plaintiff was present with his attorney, Stephen Pusatier. *Id.* Vocational expert Jay Steinbrenner testified by telephone. Tr. 65–74. Prior to the hearing, Plaintiff submitted a memorandum alleging the following severe impairments: vertebral burst fracture at L1; spinal thoracic fusion with instrumentation at T11-L3; degenerative changes throughout the thoracic spine; lymphoma; and diaphragmatic hernia. Tr. 294. Plaintiff also claimed he had the following non-severe impairments: ischemic heart disease, and bursitis in his right knee. *Id.*

During his hearing, Plaintiff testified that these impairments, particularly his back, caused constant mid- and lower-back pain of four or five on a scale of ten. Tr. 47–48. He noted that "mobility is a big issue," and that he can't lift or bend much, or walk on uneven surfaces. Tr. 48. Plaintiff stated he is capable of his own self-care, that he takes out the garbage and mows the lawn at home, that he has no problems using his hands, and that he was able to drive to North Carolina by stopping every couple of hours. Tr. 55–60. However, he also testified that he has to lie down for two to three hours on the average day to relieve his back pain, and that he has to lean on something when he stands to help ease the pain. Tr. 62–63.

In her decision on May 17, 2017, the ALJ found that Plaintiff was not disabled. Tr. 7. On June 4, 2018, the Social Security Administration's Appeals Council denied Plaintiff's request for further review of the ALJ's decision. Tr. 1. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

42 U.S.C. § 405(g) defines the process and scope of judicial review of the final decision of the Commissioner on a claim for DIB benefits. A reviewing court must first determine "whether the Commissioner applied the correct legal standard." *Jackson v. Barnhart*, No. 06-CV-0213, 2008 WL 1848624, at *6 (W.D.N.Y. Apr. 23, 2008) (quoting *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)). "Failure to apply the correct legal standards is grounds for reversal." *Id.* (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

Provided the correct legal standards are applied, a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp.3d 260, 264 (W.D.N.Y. 2014) (citations omitted). To determine whether a finding, inference or conclusion is supported by substantial evidence, "[t]he Court carefully considers the whole record, examining evidence from both sides 'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Tejada*, 167 F.3d at 774 (quoting *Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir. 1997)). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute our judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

DISCUSSION

The law defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

4

continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has outlined a "five-step, sequential evaluation process" to determine whether a DIB claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the sequential evaluation. *Melville*, 198 F.3d at 51. At step five, the burden shifts to the Commissioner only to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Asture*, 566 F.3d 303, 306 (2d Cir. 2009).

In her decision in this case, the ALJ followed this five-step sequential evaluation process and found that Plaintiff was not disabled. Tr. 10. At step one of the analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 9, 2014, the alleged onset date. Tr. 12. At step two of the analysis, the ALJ determined that Plaintiff had the following severe impairments: vertebral burst fracture at L1; spinal thoracic fusion with instrumentation at T11-L3; degenerative changes throughout the thoracic spine; and diaphragmatic hernia. *Id*. At step three, the ALJ determined that Plaintiff's impairments, either

5

individually or in combination, did not meet or medically exceed the severity of one of the Commissioner's listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 13.

Before proceeding to step four, the ALJ made a determination of Plaintiff's residual functional capacity. "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545. After considering the entire record, the ALJ determined that Plaintiff had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), subject to several restrictions.[1] Tr. 14. Based on this RFC, the ALJ found that Plaintiff was unable to perform any of his past relevant work as a carpenter, laborer, or dairy farm worker. Tr. 25. However, based on vocational expert Jay Steinbrenner's testimony, at step five the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform, specifically, a ticket seller, a telephone survey worker, or a telemarketer. Tr. 25–26 and Tr. 65–73. Hence, the ALJ concluded that Plaintiff is not disabled. *Id.*

In seeking reversal of the Commissioner's decision, Plaintiff claims that the ALJ's decision is not supported by substantial evidence. In particular, Plaintiff argues the ALJ erred by not giving controlling weight to the medical opinion of

---

[1] For instance, the ALJ's RFC stated that Plaintiff "can perform occasional pushing and pulling for the operation of foot controls and occasional climbing of ramps and stairs but should never climb ladders, ropes or scaffolds . . . [and] can perform occasional stooping (i.e. bending at the waist) but never kneeling, crouching (i.e. bending at the knees) and crawling." Tr. 14.

Plaintiff's treating source, Dr. Lindsey Clark, in the formulation of Plaintiff's RFC. Pl. Mem. of Law, 8, Dec. 27, 2018, ECF No. 9-1.

Plaintiff's "Treating Physician": Dr. Lindsey Clark, M.D.

Dr. Lindsey Clark, M.D., was Plaintiff's treating physician for his back surgery and subsequent recovery. *See, e.g.,* Tr. 303. In addition to the report from Plaintiff's operation, the record contains several treatment notes from Plaintiff's visits to Dr. Clark, as well as of x-rays that Dr. Clark ordered and evaluated. For example, following an office visit in December 2014, Dr. Clark recorded that Plaintiff "remains unable to work at this time." Tr. 660. After Plaintiff's office visits in March and May 2015, and in May 2016, Dr. Clark's notes indicate that Plaintiff "remains out of work until further notice." Tr. 557, 663, 667.

Additionally, Dr. Clark submitted a medical source statement dated March 15, 2017. Tr. 650. In pertinent part, Dr. Clark's statement assesses Plaintiff's ability to do the work-related activities as follows: able to lift up to ten pounds continuously, up to twenty pounds occasionally, but never lift weights heavier than twenty pounds; able to carry up to ten pounds continuously, up to twenty pounds occasionally, but never carry weights heavier than twenty pounds; and, in an eight hour work day, able to sit for a total of two hours, stand for a total of two hours, walk for a total of two hours, but must lay down for the remaining two hours. Tr. 650–651. Under the question asking her to identify the particular medical or clinical findings supporting her assessment of Plaintiff's limitations with respect to sitting, standing and walking,

7

Dr. Clark wrote that Plaintiff is "unable to sit on the exam table continuously for [more than] 5 min[utes]." Tr. 651. Dr. Clark indicated that all of the above limitations have lasted or will last for 12 consecutive months or more. Tr. 655.

The "Treating Physician Rule"

The "treating physician rule" in 20 C.F.R. § 404.1527 applies to all DIB claims filed before March 27, 2017.[2] § 404.1527(c)(1) provides that, generally speaking, a source who has examined the claimant is entitled to greater weight than one who has not. Further, § 404.1527(c)(2) provides that if "a treating source's medical opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight."

In the recent case of *Estrella v. Berryhill*, the Second Circuit reiterated the specific procedures required of an ALJ in determining the appropriate weight to assign a treating physician's opinion. *Estrella v. Berryhill*, 925 F.3d 90 (2d Cir. 2019). The Second Circuit stated, in pertinent part:

> First, the ALJ must decide whether the opinion is entitled to controlling weight . . . . Second, if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it. In doing so, it must "explicitly consider" the following, nonexclusive "Burgess factors": "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d

---

[2] For claims filed after March 27, 2017, the rules in § 404.1520c apply to the evaluation of opinion evidence.

8

409, 418 (2d Cir. 2013) (per curiam) (citing *Burgess*, 537 F.3d at 129 (citing 20 C.F.R. § 404.1527(c)(2))). At both steps, the ALJ must "give good reasons in [its] notice of determination or decision for the weight [it gives the] treating source's [medical] opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (quoting 20 C.F.R. § 404.1527(c)(2)).

An ALJ's failure to "explicitly" apply the Burgess factors when assigning weight at step two is a procedural error. *Selian*, 708 F.3d at 419–20. If "the Commissioner has not [otherwise] provided 'good reasons' [for its weight assignment]," we are unable to conclude that the error was harmless and consequently remand for the ALJ to "comprehensively set forth [its] reasons." See *Halloran*, 362 F.3d at 33. If, however, "a searching review of the record" assures us "that the substance of the treating physician rule was not traversed," we will affirm. *See id.* at 32.

*Estrella*, 925 F.3d at 95–96.

<u>The ALJ's Analysis</u>

In the present case, the ALJ's decision provided a thorough review of the record and recent medical history of the Plaintiff. Tr. 14–24. The ALJ's discussion of the weight assigned to Dr. Clark's opinion, on the other hand, was cursory. With respect to Dr. Clark's medical opinion, the ALJ stated:

> I give Dr. Clark's medical source statement . . . partial weight because it is consistent with the record as a whole as it relates to [Plaintiff's] diagnosis, as well as many of the functional limitations outlined in the medical source statement that flow from the diagnosis. As such, certain aspects of the doctor's opinions are in fact consistent with the residual functional capacity determined in this case. However, it is not clear that the doctor is familiar with the [Commissioner's] definition of 'disability' . . . . It is possible that Dr. Clark is referring solely to an inability to perform [Plaintiff]'s "past work" when she indicates in her medical records that [Plaintiff] "remains unable to work at this time," which is consistent with the conclusions reached in this decision.

Tr. 24. In seeking reversal, Plaintiff argues the ALJ had the duty to seek additional

clarification from Dr. Clark, and should have assigned Dr. Clark's opinion controlling weight.

*The ALJ's Duty to Recontact Dr. Clark*

First, Plaintiff argues that to the extent the ALJ found that it was "not clear" whether Dr. Clark was familiar with the Commissioner's definition of disability, the ALJ had the duty to make a reasonable effort to contact Dr. Clark and ask the basis of her opinion. Pl. Mem. of Law at 9. In support of his argument, Plaintiff cites an opinion of this Court that quoted a Commissioner's ruling on "Medical Source Opinions on Issues Reserved to the Commissioner." *Goble v. Colvin*, No. 15-CV-6302 CJS, 2016 WL 3179901, at *5 (W.D.N.Y. June 8, 2016) (quoting *Titles II & XVI: Med. Source Opinions on Issues Reserved to the Comm'r*, SSR 96-5P (S.S.A. July 2, 1996)). Plaintiff cites *Goble* and SSR 96-5P for the proposition that "[f]or treating sources, the rules also require that we make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us . . . ." Pla. Mem. of Law at 9.

However, Plaintiff's suggestion that the ALJ was required to recontact Dr. Clark and probe her understanding of "the [Commissioner's] definition of 'disability'" is not consistent with the plain meaning of SSR 96-5P. The "basis of an opinion" in the passage from SSR 96-5P cited by Plaintiff is not equivalent to the treating source's understanding of the law. Rather, for the purposes of SSR 96-5P, the "basis of an opinion" signifies the medical evidence that served as the foundation for the treating

10

source's conclusion. Hence, two paragraphs after the passage quoted by Plaintiff, SSR 96-5P states that "[i]f the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the [ALJ] must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." *Goble*, 2016 WL 3179901 at *5 (quoting SSR 96-5P, 1996 WL 374183 at *3).

There is no question that the ALJ was familiar with the evidence in the record that Dr. Clark used as the basis of her opinion. *See* Tr. 16–19 (discussing Dr. Clark's treatment records). In fact, each instance of Dr. Clark's opinion in the record to the effect that Plaintiff "remains out of work until further notice" is preceded by a detailed medical record summarizing the doctor's findings in a particular examination. *See, e.g.,* Tr. 665–667 (summarizing the doctor's examination on May 6, 2015). Accordingly, the Court finds the ALJ did not have a duty to recontact Dr. Clark to clarify her understanding of the Commissioner's definition of "disability."

*The Weight Assigned to Dr. Clark's Opinion*

Second, Plaintiff argues the ALJ should have assigned Dr. Clark's opinion controlling weight. Under 20 C.F.R. § 404.1527(c)(2), a treating physician's medical opinion on the issue(s) of the nature and severity of a claimant's impairment(s) is given controlling weight if it is both "well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in [the] case record . . . ." Where the ALJ declines to afford controlling weight to the treating source's opinion, the ALJ must explicitly consider

11

the "Burgess factors" (e.g., frequency of treatment), and give good reasons for the weight she gives the treating physician's opinion. *Estrella*, 925 F.3d at 95–96 (internal citations omitted). Where the ALJ fails to do so, it is procedural error requiring remand, unless "a searching review of the record" assures the reviewing court "that the substance of the treating physician rule was not traversed." *Id.* at 96 (quoting *Halloran*, 362 F.3d at 32–33).

The Court finds that in this case the ALJ committed procedural error by failing to follow the specific procedures required of an ALJ in determining the appropriate weight to assign a treating physician's opinion. *Estrella*, 925 F.3d at 95–96. The ALJ gave only partial weight to Dr. Clark's statement, yet failed to explicitly discuss the Burgess factors in her explanation for this weight.

Nevertheless, after a searching review of the record in this case, the Court concludes that the substance of the treating physician rule was not traversed. *See Halloran*, 362 F.3d at 32. Dr. Clark's opinion was not entitled to controlling weight because it was inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2)

For instance, the ALJ assigns moderate weight to the opinion of Dr. Karpman, an independent medical examiner who conducted a direct examination of Plaintiff. Tr. 562–564. Dr. Karpman opined that Plaintiff "is capable of performing activities of daily living and returning to work with the following restrictions: no lifting over 15 pounds, and no repetitive bending and no repetitive twisting with his back." Tr. 566.

12

Plaintiff correctly notes that the Second Circuit has cautioned that "ALJs should not rely heavily on the findings of consultative physicians after a single examination." *Selian*, 708 F.3d at 419. However, the ALJ in this case cited good reasons for assigning moderate weight to Dr. Karpman's opinion, namely, that Dr. Karpman conducted a detailed review of Plaintiff's medical records, and that Dr. Karpman's opinion was aligned with both the opinion of the vocational consultant and Dr. Clark in important respects. Tr. 24.

Additionally, the ALJ gave moderate weight to the report of vocational consultant Robert P. Tremp, Jr., issued on March 16, 2015.[3] Tr. 672. After administering an extensive battery of both "hands-on" and "paper-and-pencil" vocational tests, Mr. Tremp concluded that "[f]rom a functional point of view, [Plaintiff] is capable of sedentary work." Tr. 677, 681. In reaching this conclusion, Mr. Tremp noted that "Plaintiff requires the ability to alternate between sitting and standing . . . with an accommodation of being able to move about freely." Tr. 681. Yet he reiterated that although Plaintiff did not have the capacity to return to his former position of carpenter, Plaintiff "retains the capacity to perform a number of sedentary to light duty jobs in the categories of assembler, repairer, operator, tender, inspector, tester, etc." Tr. 682.

---

[3] The ALJ rightly noted that Mr. Tremp's report is not objective medical evidence or medical opinion under the regulations. *See* 20 C.F.R. § 404.1513. However, the ALJ is required to consider such other source evidence to discern the impact that a claimant's impairments have on work capacity. *See, e.g.*, 20 C.F.R. § 404.1529(c)(3) ("any symptom-related functional limitations and restrictions that your medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account").

13

Finally, as the ALJ noted, "[t]reatment notes in the record do not sustain the claimant's allegations of disabling symptoms." Tr. 25. For example, a review of Plaintiff's physical therapy treatment notes from 2015 reveals that Plaintiff frequently reported soreness, but also that he reported such activities as "working on house" (Tr. 610), "hanging drywall" and "painting his house" (Tr. 611), "doing work around house and wife's shop" (Tr. 612), and "working hard over the weekend" (Tr. 615). Further, aside from Dr. Clark's observation regarding Plaintiff's inability to sit still on an examination table for more than 5 minutes, there are no restrictions listed in the treatment notes that would suggest Plaintiff is limited to two hours of standing, two hours walking, and two hours sitting in an eight hour day.

Given the above-cited evidence, the Court finds that Dr. Clark's opinion was not entitled to controlling weight as a matter of law under the treating physician rule because it was "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). Further, the Court also finds that the ALJ's decision in this case was supported by substantial evidence. As the Second Circuit has stated, "[u]ltimately, '[i]t is the function of the [Commissioner], not [the reviewing courts], to resolve evidentiary conflicts . . . .'" *Netter v. Astrue*, 272 F. App'x 54, 55 (2d Cir. 2008) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)). Accordingly, the decision of the ALJ is affirmed.

14

CONCLUSION

For the reasons discussed above, it is hereby ORDERED that Plaintiff's motion for judgment on the pleadings (ECF No. 9) is denied, and Commissioner's motion (ECF No. 12) is granted; and it is further ORDERED that the Clerk close the case.

DATED:     March 16, 2019
               Rochester, New York

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge